IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MICHAEL WIDMER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 13−cv−23−SCW |
| ) | |
| BAYLER ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM AND ORDER

**WILLIAMS, Magistrate Judge:**

### INTRODUCTION

On December 12, 2012, Plaintiff brought suit, claiming that he had been the victim of multiple constitutional violations while incarcerated at Lawrence Correctional Center. (Doc. 1). The Court determined that many of the claims were not related and severed them into separate cases on January 8, 2013. (Doc. 1). The threshold order found that Plaintiff stated a claim against Bayler, a correctional officer at Lawrence, for interference with access to the Courts. (Doc. 1).

On October 20, 2014, the Defendants filed their Motion for Summary Judgment. (Doc. 48). On December 24, 2014, Plaintiff requested an extension of time, which was granted. (Doc. 53). Plaintiff filed a memorandum in opposition on January 23, 2015. (Doc. 54). Plaintiff contemporaneously filed a Motion for Hearing on the issue of summary judgment. (Doc. 55). Defendant filed no reply brief. Having reviewed the parties' filings, the Court has determined that a hearing is unnecessary. Accordingly, Plaintiff's Motion for a hearing is **DENIED**. (Doc. 55). For the following reasons, Defendants' Motion for Summary Judgment is **GRANTED**. (Doc. 48).

### LEGAL STANDARDS

1. **Summary Judgment Standard**

Summary judgment is proper only if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. **Dynegy Mktg. & Trade v. Multiut Corp., 648 F.3d 506, 517 (7th Cir. 2011) (citing Fed. R. Civ. P. 56(a)).** The party seeking summary judgment bears the initial burden of demonstrating—based on the pleadings, affidavits and/or information obtained via discovery—the lack of any genuine issue of material fact. **Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).** In determining whether a genuine issue of material fact exists, the Court must view the record in a light most favorable to the nonmoving party. **Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).**

If a party fails to properly address another party's assertion of fact, courts may "grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it." **FED. R. CIV. P. 56(e).** A mere scintilla of evidence supporting the non-movant's position is insufficient; a party will successfully oppose summary judgment only when it presents definite, competent evidence to rebut the motion. **Anderson, 477 U.S. at 252. See also Steen v. Myers, 486 F.3d 1017, 1022 (7th Cir. 2007) ("[S]ummary judgment is . . . the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events.") (internal citations omitted).** There is "no genuine issue of material fact when no reasonable jury could find in favor of the nonmoving party." **Van Antwerp v. City of Peoria, 627 F.3d 295, 297 (7th Cir. 2010); accord Anderson, 477 U.S. at 248 (finding material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party).**

At summary judgment, the Court's role is not to evaluate the weight of the evidence, to judge witness credibility, or to determine the truth of the matter, but rather to determine whether a

genuine issue of triable fact exists. **Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co., 528 F.3d 508, 512 (7th Cir. 2008)**.

**FACTUAL BACKGROUND**

Plaintiff's Complaint alleges that on July 25, 2012, while boarding a bus to transfer to Stateville on a court writ, Plaintiff was approached by Bayler and that Bayler took his legal mail, hygiene products, and shower shoes from him. (Doc. 2, p. 6). Bayler said, "You ain't taking shit with you Widmer." (Doc. 2, p. 6). The Complaint further stated that as a result of these actions, Plaintiff was forced to enter a guilty plea on two felonies and that he was "unable to effectively fight for custody of [his] son Parker Widmer." (Doc. 2, p. 6). No other children are named. On February 25, 2014, the Court dismissed any claims based on Plaintiff's criminal proceedings because it found them to be *Heck* barred. (Doc. 40).

Plaintiff was incarcerated at Lawrence Correctional Center from June of 2012 until June of 2013. (Doc. 49-1, p. 5-6). He departed the facility temporarily on a writ to Stateville Correctional Center between June 25, 2012 and September 12, 2012. (Doc. 49-1, p. 6). The writ was for two criminal matters and three civil matters. (Doc. 49-1, p. 6). The civil matters included Ford County Case 09-JA-14, a child custody matter regarding Elliot Graff; 09-JA-15, a child custody matter regarding Remington Widmer; and 11-JA-1, a child custody matter regarding Parker Widmer. (Doc. 49-1, p. 7). Remington and Parker are Plaintiff's sons; Graff is Plaintiff's stepson. (Doc. 49-1, p. 7). The hearings put Plaintiff's custodial and parental rights at issue. (Doc. 49-1, p. 7). Plaintiff does not recall the specific dates of specific hearings. (Doc. 49-1, p. 11).

The day before Plaintiff left for Stateville, Officer Hough came to his cell and told him to pack up everything except what he needed to take on his court writ. (Doc. 49-1, p. 16). Hough told him he could take his shower shows, shampoo, soap, hygiene, and legal work only. (Doc. 49-1, p. 16). Hough authorized Plaintiff to keep those items in his cell, gave him a clear plastic bag to hold

3

them in, and took the rest of Plaintiff's property to personal property for storage. (Doc. 49-1, p. 16). Plaintiff had his shower shoes, soap and shampoo, and several folders and manila envelopes pertaining to his custody case. (Doc. 49-1, p. 19).

Plaintiff encountered Bayler while he was in line for the transfer bus. (Doc. 49-1, p. 19-20). Bayler said, "What is all this shit? You ain't taking any of this shit with you. Give me a trash sack." (Doc. 49-1, p. 19-20). Plaintiff told Bayler that he had legal documents that he needed for court. (Doc. 49-1, p. 20). Bayler responded, "I don't give a damn about what you are doing." (Doc. 49-1, p. 20). Bayler then threw all of Plaintiff's stuff into a trash can. (Doc. 49-1, p. 20). Plaintiff asked for a shakedown slip or a receipt. (Doc. 49-1, p. 20). Bayler refused. (Doc. 49-1, p. 20). Prior to tossing the documents Bayler skimmed through them briefly. (Doc. 49-1, p. 20-21). A Stateville guard confirmed to Plaintiff upon arrival that nothing had been sent with him on the bus. (Doc. 49-1, p. 22). Plaintiff believes Bayler may have thrown his things away because Bayler was a lieutenant in segregation, where Plaintiff was housed, and the two did not get along. (Doc. 49-1, p. 24). Bayler testified that he was familiar with Plaintiff and that he thinks Plaintiff filed grievances against him in the past. (Doc. 54-2, p. 5).

Bayler testified that a prisoner on a transfer is supposed to send any property he wishes to have at the new institution through the property department. (Doc. 54-2, p. 4). He is not supposed to show up to the transfer with any property in hand. (Doc. 54-2, p. 4). However, if an inmate showed up with legal mail for a court proceeding that was imminent after his transfer, that property would come with the transfer group on the bus. (Doc. 54-2, p. 4). The guards would review any legal mail to insure that it is truly legal mail. (Doc. 54-2, p. 4).

Prior to his incarceration, Plaintiff was given a notice of adjudication from either DCFS or Lutheran Social Services and his children were taken away from him. (Doc. 49-1, p. 34). Plaintiff lost custody of the two elder children in 2009. (Doc. 49-1, p. 41). His children had been gone a year

4

before Plaintiff became incarcerated. (Doc. 49-1, p. 34). During the time between the removal and Plaintiff's incarceration, he had been making an effort to work on the issues identified by the social services agency. (Doc. 49-1, p. 34-35). However, Plaintiff believes that the hearings in 2012 may have involved all three children because the state did not move to terminate his rights to Parker Widmer until 2011 and the cases were consolidated and continued. (Doc. 49-1, p. 41-42).

Plaintiff's documents included letters of accomplishment, affidavits from people in the community attesting to his character, affidavits from former clients attesting to the fact that Plaintiff owned his own business, and affidavits attesting to the fact that he was a good father. (Doc. 49-1. p. 28). He also had certifications from Western Engine in Chicago, Detroit Diesel Mechanics, and Allison Transmission. (Doc. 49-1, p. 31). He had letters stating that he had attending anger management classes. (Doc. 49-1, p. 31). He had an educational certificate from Rend Lake Community College. (Doc. 49-1, p. 31).

Plaintiff requested a continuance due to the loss of his documents; Judge Steve Pacey in Ford County denied the request. (Doc. 49-1, p. 29-30). Plaintiff cannot recall whether he was allowed to testify at the hearing, and refused to speculate on what he might have said if he did testify. (Doc. 49-1, p. 31-32). Plaintiff asserted that he brought this issue, as well as an issue with his mail, to the judge's attention. (Doc. 49-1, p. 32-33). Plaintiff testified that his parental rights were terminated as to all three children because Plaintiff did not provide evidence tending to show proof of improvement in the nine months following the adjudication notice. (Doc. 49-1, p. 30).

Defendant submitted documents showing that Plaintiff received writs to appear in case 11-JA-1 on June 24, 2013, August 6, 2013, and September 9, 2013 (Doc. 49-4).

**ANALYSIS**

A. <u>Plaintiff's Claims regarding Remington Widmer, Elliot Graff, and that Bayler took action against him in retaliation.</u>

Plaintiff argues for the first time in his Response in Opposition to the Motion for Summary Judgment that his claims include the loss of custody of Remington and Graff. Plaintiff's basis for including those two children, whom he concedes that he lost custody of in 2009, is that the cases were consolidated and that he "may" have had hearings on all three of them in 2012. Even if he did have hearings as to all three children at that time, Plaintiff brought his Complaint only as to Parker. (Doc. 2). A plaintiff cannot amend his complaint by raising new claims in his brief in opposition to a motion for summary judgment. **Grayson v. O'Neill, 308 F.3d 808, 817 (7th Cir. 2002)**. Plaintiff cannot now claim, for the first time, that his Complaint included claims for the loss of custody of Graff and Remington. Nor can he argue that Bayler confiscated his property in retaliation because Plaintiff had previously filed grievances on him. The Complaint is limited to Plaintiff's claim that he was denied access to the courts to litigate his custody claim on Parker.

B. <u>Plaintiff's Claims regarding Parker Widmer</u>

As an initial matter, the Court notes that both sides have ignored the invitation in the Court's February 25, 2014 order to brief the issue of whether a family law matter can be the basis for an access to the courts claim. But even so, the Court finds that Plaintiff has not submitted sufficient evidence for the Court to conclude that he was denied access to the courts on his child custody matter.

Prisoners are entitled to "meaningful" access to the courts. **Gentry v. Duckworth, 65 F.3d 555, 558 (7th Cir. 1995) (citing Bounds v. Smith, 430 U.S. 817, 828 (1977))**. A prisoner claiming denial of access to the courts must show actual injury. **Lewis v. Casey, 518 U.S. 343, 352 (1996)**. Specifically, on summary judgment, a prisoner must show detriment caused by the challenged conduct. **Howland v. Kilquist, 833 F.2d 639, 642 (7th Cir. 1987)**. In "backward-looking claims," where a plaintiff alleges that specific litigation ended poorly, the plaintiff must give defendants "fair notice" of the claim, including the specific underlying claim that was lost, a description of the official

6

acts that frustrated the litigation, and the remedy that may be awarded as recompense, which must not be available in another potential suit. **Steidl v. Fermon, 494 F.3d 623, 633 (7th Cir. 2007)**.

Here, the parties do not dispute that there is a material issue of fact on whether Bayler confiscated certain documents from Plaintiff. The Court takes the evidence in the light most favorable to Plaintiff and assumes that he did for the purposes of this Motion. Bayler argues, however, that Plaintiff has not shown enough evidence of detriment. The Court agrees. Plaintiff has submitted no documentary evidence regarding the outcome of any child custody hearings he may have attended between June 2012 and September 2012, despite Bayler's request for this information.[1] He cannot remember what specifically he told the judge in those hearings, although he is sure he explained that the prison staff was hindering him. He cannot even remember the dates of any hearings, or whether it addressed just Parker or all three children. Although Plaintiff testified that he ultimately lost custody, it is not clear if that was the outcome of the summer 2012 hearing or another series of proceedings. Plaintiff himself testified that Parker was made a ward of the state in 2011, a year before the events at issue. Defendants submitted evidence that Plaintiff attended proceedings in the same matter in 2013, after he left Lawrence Correctional Center. There is no evidence in the record what happened at those proceedings. On this record, the Court cannot draw a line from Bayler's destruction of documents to Plaintiff's termination of his custodial rights.

Plaintiff's failure is particularly egregious because Plaintiff has filed other cases in which he has alleged other guards also caused him to lose custody of Parker. **See, e.g., Widmer v. Lawless, No. 13-cv-1245-MJR-SCW (S.D. Ill) (alleging Lt. Lawless confiscated legal pads and documents at Menard Correctional Center on July 31, 2013 that caused Plaintiff to lose custody of Parker Widmer) (dismissed on res judicata grounds); Widmer v. Engelson, 13-cv-**

---

[1] Best practice, of course, would have been to raise Plaintiff's objections to the discovery requests with the Court.

**6095 (N.D. Ill) (alleging in the original complaint that Edwards, an officer at Stateville Correctional Center "refused to allow me to take my legal transcripts to court with me, causing me to lose my hearing to terminate my parental rights of my son Parker" on August 6, 2013).**[2] In order for Plaintiff to succeed on this claim, Plaintiff needs to prove that Bayler's actions actually caused him detriment. Plaintiff makes no excuses for the lack of documentation; rather he relies on his own testimony. That testimony, standing alone, is too vague because it does not describe what the judge relied on in terminating Plaintiff's parental rights, and it does not allow the Court to determine what role Bayler's actions played in light of Plaintiff's other accusations. The Court does not even have information about what was decided, if anything, at the 2012 hearing. Many of the documents that Plaintiff claims were destroyed described things within the realm of Plaintiff's first-hand knowledge. It is not clear from the record whether Plaintiff testified to those matters and the state court judge found him not credible without documentary evidence, or whether he based his decision on entirely independent grounds. Given Plaintiff's other allegations and the complete absence of any documentation from the state court addressing the grounds for its decision to terminate Plaintiff's parental rights, there is no evidence that Bayler's actions caused Plaintiff a concrete determent. Bayler is entitled to summary judgment.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment. (Doc. 48). Plaintiff's Motion for a hearing is **DENIED**. (Doc. 55).

---

[2] Plaintiff also represented in that Complaint that he had no strikes under the PLRA. Plaintiff has had a strike since December 1999. He has currently "struck out" under the PLRA.

**IT IS SO ORDERED**.

**DATED: April 30, 2015**　　　　　　　　　　　　　　　　/s/ *Stephen C. Williams*
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**Stephen C. Williams**
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge